In the Matter of the Application of Michael **SCHMITZ**, Christian Böhling, Katrin Höwe, Peter Höwe, Thomas Ostermann, Claudia Malm–Ostermann, Anne Schieckel, Christine Schieckel, Werner Schmitz, Irene Schulze, Ralf Schulze, Rolf Keeve, Helga Zechmeister, Bernd Collin, Andreas Lange, Gabriele Thomas, Anna Waldmann, Ewald Waldmann, Bodo Dobberkau, Irmtraut Dobberkau, Josef Messerer, Dr. Helmut Cullmann, Achim Breidenstein, Dr. Olaf Knoblich, Dr. Gudrun Bräu, Keller Manfred, Übelhör Otto, Gergely Katalin, Petitioners.

No. M19–88.

United States District Court,
S.D. New York.

April 24, 2003.

## OPINION

STEIN, District Judge.

Petitioners, plaintiffs in certain lawsuits pending in the Federal Republic of Germany against Deutsche Telekom AG, seek documents produced by Deutsche Telekom in connection with a securities class action currently pending before this Court. Even though the statutory prerequisites of 28 U.S.C. § 1782 have been met, this Court exercises its discretion to deny the petition on the grounds that the twin aims of the statute—providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts—would not be furthered if the petition were granted.

### I. Background

Petitioners are individual plaintiffs in four lawsuits currently pending in the Federal Republic of Germany against Deutsche Telekom, a German telecommunications company. (Braun Decl. in Support of the Petition ¶ 2 n.1). Those lawsuits allege that Deutsche Telekom "misled [plaintiffs] when [Deutsche Telekom] disseminated false statements in its prospectus and overstated the value of its real estate assets." (Stone Decl. in Support of the Petition ¶ 3; Braun Decl. ¶ 2). In addition, a consolidated securities class action litigation is currently pending in this Court entitled *In re Deutsche Telekom AG Securities Litigation,* 00 Civ. 9475(SHS) (the "American

Action"). Petitioners contend that the allegations in the American Action are "substantially identical" to the allegations in the German actions. (Stone Decl. ¶ 4). Deutsche Telekom is represented in the American Action by Cravath, Swaine & Moore, while the class action plaintiffs' lead counsel are Milberg, Weiss, Bershad, Hynes & Lerach LLP and Bernstein, Liebhard & Lifshitz, LLP. During the course of the American Action, approximately 300,000 documents (the "Documents") have been produced by Cravath to the class action plaintiffs' lead counsel pursuant to a confidentiality order. (*See* Stone Decl., Ex. C—Stipulation and Order Governing the Production and Use of Confidential Material dated October 19, 2001). Those Documents are currently located in the Southern District of New York in the possession of Cravath; Milberg, Weiss; and Bernstein, Liebhard (collectively, "respondents"). By Order to Show Cause filed January 21, 2003, petitioners now seek production of the Documents from respondents pursuant to 28 U.S.C. § 1782.

At a February 18, 2003 oral argument before this Court sitting in Part I, Cravath opposed that application. Milberg, Weiss and Bernstein, Liebhard stated that they were taking no position as to the production of the Documents.

II. Discussion

A. Petitioners Meet the Statutory Requirements of Section 1782

■ This petition is brought pursuant to 28 U.S.C. § 1782, which governs under what conditions U.S. courts may provide assistance to foreign and international tribunals and litigants before those tribunals. The statute "affords access to discovery of evidence in the United States for use in foreign proceedings." *In re Edelman,* 295 F.3d 171, 175 (2d Cir.2002). 28 U.S.C. § 1782 provides, in pertinent part, that,

> "[t]he district court of the district in which a person resides or is found may order him to ... produce a document ... for use in a proceeding in a foreign or international tribunal.... To the extent that the order does not prescribe otherwise, ... the document ... [shall be] produced, in accordance with the Federal Rules of Civil Procedure."

■ The U.S. Court of Appeals for the Second Circuit has identified three requirements in section 1782 as follows,

> "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or 'any interested person.'"

*Edelman,* 295 F.3d at 175–76 (citing *In re Esses,* 101 F.3d 873, 875 (2d Cir.1996) (per curiam)).

■ All these requirements are met here. Cravath argues that the first requirement—that the person from whom discovery is sought be found in the Southern District of New York—is not satisfied since the documents are only in Cravath's "temporary custody ... solely for the purposes of the U.S. Litigation." (Baron Decl. In Opposition to the Petition ¶ 3). That argument is creative, but sails far wide of the mark. Application of section 1782 does not involve an analysis of the duration of residency of the documents or even why a respondent has the documents. It is sufficient that respondents reside in this district, as they concedely do. *See Edelman,* 295 F.3d at 179–80 (section 1782 permits depositions "without regard to whether the deponent is 'residing' in the district or only sojourning there") (cita-

tions omitted). The parties concede that the second and third requirements are met. Accordingly, petitioners have met the three requirements of section 1782.

B. The Court's Discretion Should Not Be Exercised In Favor of Petitioners

Simply because the facial requirements of section 1782 have been met does not end the inquiry, for Congress and decisional law have given district courts "broad discretion" over the issuance of discovery orders pursuant to section 1782(a). *See Edelman,* 295 F.3d at 181. The Second Circuit has instructed the district courts to exercise their discretion "in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts....'" *In re Metallgesellschaft,* 121 F.3d 77, 79 (2d Cir. 1997) (quoting *In re Malev Hungarian Airlines,* 964 F.2d 97, 100 (2d Cir.1992)). The circumstances under which petitioners seek the Documents do not satisfy the aims of the statute.

1. The German Authorities Denied Petitioners Access to the Documents in Germany

One of the factors a district court may consider in determining how to exercise its discretion pursuant to section 1782 is whether the documents would be discoverable under the relevant foreign law. *See In re Gianoli Aldunate,* 3 F.3d 54, 59–60 (2d Cir.1993) ("The court may take into account the nature and attitudes of the government of the country from which the request emanates and the character of the proceedings in that country ....") (quoting S.Rep. No. 1580, 88th Cong., 2nd Sess. (1964), *reprinted in* 1964 U.S.Code Cong. & Admin. News 3782, 3788); *Metallgesellschaft,* 121 F.3d at 79. However, that inquiry should serve at most as a "useful tool" and one among many factors utilized to inform discretion, but can serve no greater purpose given that section 1782 "makes no reference whatsoever to a requirement of discoverability under the laws of the foreign jurisdiction." *Metallgesellschaft,* 121 F.3d at 79 (quoting *Aldunate,* 3 F.3d at 59–60).

At the February 18 hearing, Cravath stipulated that Deutsche Telekom initially produced the Documents, which originated in Germany and were maintained in Germany prior to the American Action, along with other documents not at issue here, to the Public Prosecution Office in Bonn, Germany, in connection with an ongoing criminal investigation of Deutsche Telekom. Petitioners subsequently sought access to the Documents but were refused access at that time by the German Public Prosecution Office "in accordance with the provisions of the German law of criminal procedure." *See* Letter, dated February 13, 2003, from Dr. Hansjörg Geiger, State Secretary of the German Federal Ministry of Justice in Berlin to Larry D. Thompson, Deputy Attorney General, U.S. Department of Justice (the "Ministry of Justice Letter") at 1. *See also* Braun Further Decl. in Support of the Petition ¶ 6.

While not detailing the specific reasons why petitioners were denied access to the Documents, the letter from Dr. Geiger—which was forwarded to the U.S. Deputy Attorney General by the German Embassy in Washington, D.C.—contends that, pursuant to the German Code of Criminal Procedure, "[i]nspection of the files will be refused if overriding interests of the accused worthy of protection constitute an obstacle thereto. Inspection of the files may also be refused if the purpose of the investigation appears to be jeopardized or if the proceedings could be considerably

delayed thereby." Ministry of Justice Letter at 2. *See also* Baudisch Decl., Ex. A—Letter dated January 23, 2003, from Bonn District Attorney's Office to Dr. Hans Dahs, counsel to Dr. Ron Sommer, the former CEO of Deutsche Telekom ("Bonn Letter") (production of the Documents "would ultimately be a circumvention of the restrictions on the access to the pieces of evidence so far imposed by the Bonn District Attorney's Office").

The Ministry of Justice Letter is very clear that "disclosure of the documents concerned may jeopardize German sovereign rights," that the German authorities have so far denied access to the Documents to these same petitioners in Germany, that the Bonn Public Prosecution Office made copies of the Documents available for the discovery proceedings in the American Action "on the condition that they be used exclusively in those U.S. proceedings" under a confidentiality order and that, in the view of the German Ministry of Justice, production pursuant to section 1782 would "result in a circumvention of the German law of criminal procedure." Ministry of Justice Letter at 1–2. Petitioners have not provided any documentation to the Court from German governmental sources disputing these concerns.[1]

The Second Circuit has explicitly "rejected any requirement that evidence sought in the United States pursuant to section 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding." *Metallgesellschaft,* 121 F.3d at 79; *Aldunate,* 3 F.3d at 59 (same); *Malev,* 964 F.2d at 100 ("requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of [section 1782].... It would undermine the policy of improving procedures for assistance to foreign and international tribunals by imposing an additional burden on persons seeking assistance from our federal courts for matters relating to international litigation. Additionally, it would undermine the policy of prompting foreign courts to act similarly based on our own generous example.").

Similarly, this Court refuses to "read extra-statutory barriers to discovery into section 1782." *Aldunate,* 3 F.3d at 59. However, it is legitimate to take Germany's explicitly stated sovereignty concerns into account. *See U.S. v. Davis,* 767 F.2d 1025, 1035 (2d Cir.1985); *U.S. v. First Nat. City Bank,* 396 F.2d 897, 904 (2d Cir.1968). Failing to acknowledge these concerns would undermine the statute's purposes by discouraging foreign countries from heeding similar sovereignty concerns posited by our governmental authorities to foreign courts. *See In re Aldunate,* 3 F.3d at 62 (approvingly citing the district court's determination that discovery under section 1782 would "not be an affront to the Chilean court or the Chilean sovereignty."); *In re Euromepa,* 51 F.3d 1095, 1101.

In early March, petitioners submitted a letter from the Presiding Judge of the District Court of Frankfurt, where petitioners' action against Deutsche Telekom

1. At the February 18 hearing, petitioners contended that the German government had an interest in preventing petitioners from gaining access to the Documents, as Deutsche Telekom is partially owned by the German government. However, according to Deutsche Telekom's expert Rolf Stürner, Professor of Law at the University of Freiburg, Germany, all measures of investigation by the German criminal prosecutor "are subject to judicial review upon motion of the defendant or third persons." (Stürner Decl. ¶ 3). In the absence of any contrary authority submitted by petitioners, oversight of the prosecutor's actions by the German court should be sufficient to guard against the potential conflict of interest on the part of the German government raised by petitioners.

is pending, stating in its entirety that "[i]f, in this litigation, documents from a US–American proceeding are attached to a written statement in the case file, the Court will take notice of this submission." Letter, dated February 25, 2003, from the Presiding Judge of the District Court of Frankfurt to Klaus Rotter. The next day, Cravath responded with another letter from the Presiding Judge that stressed that the first letter was "indeed no declaration that the Court supported—in opposition to other authorities of the Federal Republic of Germany—the production of such documents." Letter, dated March 4, 2003, from the Presiding Judge of the District Court of Frankfurt to Bernd–Wilhelm Schmitz.

Citing *Metallgesellschaft,* petitioners argue that the petition should be granted unless there is authoritative proof that the foreign tribunal would reject the Documents. There is indeed no "authoritative proof" that the German court would reject the Documents—there is simply a letter from the Ministry of Justice noting that granting the petition would invade German sovereignty rights and letters from the District Court of Frankfurt stating that it would take notice of the documents it is given but not declaring that it supported the granting of this petition.

However, petitioners misconstrue *Metallgesellschaft.* That case did not hold that the petition should be granted in the absence of authoritative proof that the foreign tribunal would reject the Documents. Rather, it stated that "a district court should not refrain from granting the assistance afforded" under section 1782 based simply on allegations that the foreign tribunal would reject the Documents. *Metallgesellschaft,* 121 F.3d at 80.

In addition, this is not a case where Germany can "easily protect itself from the effects of any discovery order by the district court that inadvertently offended [German] practices," *Euromepa,* 51 F.3d at 1101, since the fact of permitting petitioners to have access to the Documents may itself jeopardize the ongoing criminal investigation, as set forth in the Letter from the German Ministry of Justice.[2] *See* Ministry of Justice Letter at 1–2. Certainly, to grant the section 1782 petition in these circumstances would not effectuate the twin aims of the statute—providing efficient means of assistance to participants in international litigation and encouraging other countries by example to provide similar means of assistance to our courts. Rather, there is a significant chance that doing so would hinder the efforts of German prosecutors and courts and discourage German assistance to U.S. courts in later applications made in Germany.

It is worth noting that the German civil court "may request the production of documents from the public prosecutor," Stürner Decl. ¶ 5, but it has not, as of yet, made such a request. In these circumstances, it is difficult to perceive how providing for discovery "in order to aid a foreign court in doing what that court can readily do itself, but has chosen not to" would favorably prompt foreign courts to

2. This Court has considered the Second Circuit's guidance "that although American-style discovery for one party may skew foreign litigation, 'it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright.'" *Metallgesellschaft,* 121 F.3d at 80 (quoting *In re Euromepa S.A.,* 51 F.3d 1095, 1101 (2d Cir.1995)). However, given the unique issues raised in this petition, it is not possible for this Court to closely tailor a discovery order that could comply with the twin aims of section 1782.

assist our courts in future actions. *See* Prof. Hans Smit Decl. In Opposition to the Petition ¶¶ 21–22. *See also In re Sarrio S.A.,* 119 F.3d 143, 147 (2d Cir.1997) (acknowledging the policy concerns expressed by Prof. Smit, who prepared the final version of section 1782).

2. Germany May Provide Petitioners Discovery of the Documents in the Future

Another factor this Court considers in denying the petition is that Germany has specifically left the door open for petitioners to obtain access to the Documents at some point in the future. *See* Ministry of Justice Letter at 2 ("[The public prosecutor has] not ruled out that the Public Prosecution Office will grant [petitioners] access to the files in connection with the German investigations at a later stage in the proceedings."); Bonn Letter ("[A]ccess can be granted at the earliest if and when the pieces of evidence have been made accessible for all criminal defenders.").[3]

III. Conclusion

Considering (1) the specific requests by German authorities to not provide discovery, (2) the possibility of discovery of the Documents at a later juncture by petitioners, (3) the possible affront to German sovereignty; and (4) circumvention of German criminal procedure and the possibility of jeopardizing the ongoing German criminal investigation, among other factors, granting petitioner's application would not

promote section 1782's aims. It would in fact encourage foreign countries to potentially disregard the sovereignty concerns of the United States and generally discourage future assistance to our courts. *See Metallgesellschaft,* 121 F.3d at 79.

For the foregoing reasons, the petition for discovery pursuant to 28 U.S.C. § 1782 should be denied.

---

**3.** The majority of actions granting section 1782 applications in this Circuit involve actual parties to the foreign litigation or nonparties directly related to that litigation. *See, e.g., Edelman,* 295 F.3d at 174; *In re Ishihara Chemical Co., Ltd.,* 251 F.3d 120, 122 (2d Cir.2001); *Metallgesellschaft,* 121 F.3d at 78; *Malev,* 964 F.2d at 98–99; *Euromepa,* 51 F.3d at 1097. *But see In re Law Firms of McCourts and McGrigor Donald,* M 19–96, 2001 WL 345233, *1–2 (S.D.N.Y. April 9, 2001). Here, petitioners are not seeking discovery from

Deutsche Telekom or from someone directly related to the German action. Instead, they seek discovery from counsel to the parties in the ongoing American Action. Accordingly, respondents are not participants in, and have no direct connection to, the German actions. Respondents' indirect relationship to the German action may not, by itself, deny petitioners access to the Documents, but when taken together with the factors previously discussed, this relationship militates against granting the petition.