16-2653-cv
In re Catalyst Managerial Servs., DMCC

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of February, two thousand seventeen.

PRESENT:   BARRINGTON D. PARKER,
           REENA RAGGI,
           CHRISTOPHER F. DRONEY,
               *Circuit Judges*.
------------------------------------------------------------------------
IN RE: CATALYST MANAGERIAL SERVICES, DMCC.
------------------------------------------------------------------------
CATALYST MANAGERIAL SERVICES, DMCC,
               *Appellee*,


               v.                                   No. 16-2653-cv


LIBYA AFRICA INVESTMENT PORTFOLIO,
               *Intervenor-Appellant*,


CITIBANK, N.A.,
               *Respondent*.
------------------------------------------------------------------------
APPEARING FOR APPELLANT:   CHARLENE C. SUN (James E. Berger, *on the brief*), King & Spalding LLP, New York, New York.


APPEARING FOR APPELLEE:   NAZY MODIRI, Kellner Herlihy Getty & Friedman LLP, New York, New York.

1

Appeal from a final order of the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order entered on July 27, 2016, is AFFIRMED.

Intervenor Libya Africa Investment Portfolio ("LAP") appeals from the district court's grant of Catalyst Management Services, DMCC's ("CMS") petition for judicial assistance pursuant to 28 U.S.C. § 1782(a), authorizing CMS to compel document discovery from sixteen banks for use in a wrongful-contract-termination proceeding brought by CMS against LAP in the United Kingdom. Because the district court determined, and the parties do not dispute, that the statutory requirements for § 1782 relief were met, we review the district court's decision for abuse of discretion, *see Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 79–80 (2d Cir. 2012), which we will identify only if it "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions," *id.* (internal quotation marks omitted). In so doing, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

A district court's discovery discretion under § 1782 "must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015) (internal quotation marks omitted). The Supreme Court has

2

identified the following factors as relevant to a § 1782(a) ruling: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions"; and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004). LAP concedes that the second factor likely weighs in favor of granting the requested discovery, but contends that the other three factors weigh so strongly against discovery as to manifest abuse of the district court's discretion. We address these three factors in turn, beginning with the fourth because it is the issue on which the parties' arguments principally focus.

1.     Fourth *Intel* Factor

LAP faults the district court's conclusion that CMS's discovery request is not unduly burdensome, contending that (1) the discovery was not relevant because CMS could not articulate how it would be used in the UK proceeding, and (2) the district court failed to perform the proportionality analysis required by § 1782's incorporation of Fed. R. Civ. P. 26(b)(1).[1]  *See Mees v. Buiter*, 793 F.3d at 302 (stating that district court

---

[1] In its opening brief, LAP argues without development that "the District Court failed to address whether the discovery was 'unduly intrusive' to LAP—the party whose bank records (and those of its affiliates) were to be effectively made public, creating a detailed blueprint of its finances and commercial relationships." Appellant's Br. 23. Even if this argument were properly before us, *see Bishop v. Wells Fargo & Co.*, 823 F.3d 35, 50 (2d Cir. 2016) (stating that issues insufficiently argued in briefs are considered waived and

3

should assess whether discovery sought is overbroad or unduly burdensome by applying familiar standards of Rule 26).

We conclude that the district court acted within its discretion in determining that the fourth *Intel* factor weighed in favor of discovery because CMS had sufficiently shown that the documents were necessary to support its lost-profits-damages claim in the UK proceeding. LAP's two aforementioned arguments fold into one because any proportionality analysis depends upon the relevance of the information sought—and, in the case of a § 1782 petition, relevance is assessed with regard to the foreign proceeding. LAP does not dispute that at least a portion of the profits CMS expected to earn pursuant to the contract were tied to LAP's revenues. Accordingly, it was not outside of the range of permissible decisions for the district court to conclude that documents showing the wire transfers made by and to LAP and its affiliates through U.S. banks could be used to establish the extent of CMS's lost profits following termination of the contract. This is particularly so where, as the district court found, a question has been raised as to whether the financial statements produced by LAP in the UK proceeding are accurate or complete. No different conclusion is compelled by the inability of CMS's counsel to articulate precisely how a forensic accountant would extrapolate lost profits from the requested records.

In urging otherwise, LAP contends that CMS's professed intent to use the requested discovery to support its lost-profits claim in the UK proceeding is a pretext for

normally will not be addressed on appeal), the argument fails because the district court entered a protective order for information produced by the discovery targets.

4

a fishing expedition to identify potential targets for enforcement actions if CMS were to obtain a judgment against LAP. LAP cites *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998), to argue that § 1782 cannot be used to obtain discovery in aid of enforcing a foreign judgment. But the discovery request in *Euromepa* pertained to a foreign dispute that had already been adjudicated. *See id.* at 28. In that context, we concluded that the § 1782 petition necessarily failed the *statutory* requirement that the discovery be for use in a pending foreign proceeding. *See id.* at 29. *Euromepa* does not control here, where the dispute between CMS and LAP is still being adjudicated in the UK. LAP points to no authority prohibiting the grant of a § 1782 petition where, as here, a party presents a colorable claim of being able to use the discovery in an ongoing foreign proceeding simply because the same discovery might be used to enforce a subsequent judgment.

LAP argues that the plain language of Fed. R. Civ. P. 26(b)(1) requires proportionality analysis to grant § 1782 discovery, which the district court failed to conduct here. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case* . . . ." (emphasis added)). The record, however, is to the contrary. The district court explicitly stated, *inter alia*, that it was "trying to figure out why [the requested § 1782] information helps [CMS] figure out [its] damages." S.P.A. 6. It asked "how . . . actual profits of LAP tell [CMS's counsel] what the theoretical lost profits of [her] client are," *id.* at 10, and requested responses referencing exhibits submitted by CMS. Counsel's responses and the records submitted allowed the district court to satisfy

5

itself that any relevance and proportionality thresholds were met, determinations that we conclude were well within the realm of permissible decisions.

Finally, LAP contends that proper proportionality review would have revealed that § 1782 discovery was unnecessary because LAP had and would continue to provide CMS with financial statements as part of the ongoing UK proceeding. The district court, however, noted record representations (including by the UK court and by LAP itself) calling into question the completeness and accuracy of those statements. This prompted it to conclude that § 1782 discovery could be used, at the very least, to check the accuracy of LAP's UK productions. While LAP here disputes the facts underlying this conclusion, the mere existence of the record representations identified by the district court was sufficient to support its decision.

Further, we have held that a district court may not deny § 1782 discovery solely because the foreign court did not have the opportunity to consider it first. *See In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (stating that "requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782").

Accordingly, the district court did not abuse its discretion in concluding that the requested discovery was not unduly burdensome and complied with Fed. R. Civ. P. 26.

2.      First *Intel* Factor

LAP argues that the first *Intel* factor, which asks whether the party from whom discovery is sought is a participant in the foreign proceeding, should be construed to ask whether the requested documents are within the jurisdictional reach of the foreign court.

6

It contends that the documents here requested are in the UK court's reach by virtue of its ability to order LAP to access them from third parties and produce them. The cases cited by LAP do not support its reading of this factor. *In re Elvis Presley Enterprises LLC*, No. 15-mc-386 (DLC), 2016 WL 843380 (S.D.N.Y. Mar. 1, 2016), denied a request to take discovery from a company whose subsidiary was a party to the foreign proceeding. *In re OOO Promnefstroy*, Misc. No. M 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009), denied a request to take discovery of documents that were actually in the possession of parties to the foreign proceeding. Even accepting, however, that the documents requested are accessible to LAP, the district court did not abuse its discretion in relying on evidence that questions had been raised about LAP's productions in the UK proceeding to conclude that it should allow the discovery to go forward as a means of checking the accuracy of those productions. Moreover, we have rejected the requirement that an applicant must first seek discovery abroad before bringing a § 1782 petition. *See In re Malev Hungarian Airlines*, 964 F.2d at 100; *see also In re Gianoli Aldunate*, 3 F.3d 54, 62 (2d Cir. 1993) (holding that finding as to availability under foreign law of discovery of information sought by § 1782 petition is unnecessary where district court relied on statute's "twin purposes" to grant petition).

3.     Third *Intel* Factor

Finally, LAP argues that CMS filed its § 1782 petition to circumvent foreign proof-gathering restrictions. LAP points to CMS's stated intent to use the discovery, in part, to discredit a witness statement submitted by LAP in support of a motion to stay execution pending appeal of a since-vacated judgment in the UK proceeding. CMS

7

sought to challenge the statement through cross-examination and its own witness testimony, which the UK court rejected because the validity of the statement was moot in light of the fact that LAP subsequently secured the stay by posting security. The argument fails because the UK court rejected CMS's attempt to impeach only in the context of the stay litigation. It did not rule that CMS was precluded from doing so in any later context, specifically, the merits proceeding.[2] Indeed, LAP's argument is inconsistent with its concession that "there is no evidence that the UK judge would be hostile towards receiving this assistance from this court." S.P.A. 13. Accordingly, the district court did not abuse its discretion in concluding that the requested documents would "supplement and not circumvent discovery in the UK." *Id.* at 24.

4.    Conclusion

We have considered LAP's remaining arguments and conclude that they are without merit. Accordingly, we AFFIRM the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[2] LAP effectively concedes the point by not rebutting CMS's presentation of this argument about the third *Intel* factor in its reply brief.

8