17-424-cv
Kiobel v. Cravath, Swain & Moore, LLP.

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2017
No. 17-424-cv


ESTHER KIOBEL, BY HER ATTORNEY-IN-FACT CHANNA SAMKALDEN,


*Petitioner-Appellee,*


*v.*


CRAVATH, SWAINE & MOORE LLP


*Respondent-Appellant.*[1]


ARGUED: SEPTEMBER 12, 2017
DECIDED: JULY 10, 2018


Before:        JACOBS, CABRANES, AND WESLEY, Circuit Judges.

Petitioner-Appellee Esther Kiobel seeks documents belonging to Royal Dutch Shell (a foreign company) from Shell's United States counsel, Respondent-Appellant Cravath, Swaine & Moore LLP.  The documents were transferred to Cravath for the purpose of responding to discovery requests in a prior case over which the court was ultimately found to lack jurisdiction.  The United States

---

[1] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

District Court for the Southern District of New York (Hellerstein, J.) granted Kiobel's petition seeking leave to subpoena Cravath. We reverse: it is an abuse of discretion for a district court to grant a 28 U.S.C. § 1782 petition where the documents sought from a foreign company's U.S. counsel would be "unreachable in a foreign country," because this threatens to jeopardize "the policy of promoting open communications between lawyers and their clients." Application of Sarrio, S.A., 119 F.3d 143, 146 (2d Cir. 1997).

RICHARD L. HERZ, (Marco Simons, Alison Borochoff-Porte, on the brief) EarthRights International, Washington, D.C., for Appellee Esther Kiobel.

NEAL KUMAR KATYAL, (Jessica L. Ellsworth, Sean Marotta, Eugene A. Sokoloff, Hogan Lovells US LLP, Washington, D.C.; Lauren A. Moskowitz, Cravath, Swaine & Moore LLP., New York, N.Y., on the brief), for Appellant Cravath, Swaine & Moore LLP.

John P. Elwood, Vinson & Elkins LLP, Washington, D.C. (Zachary Howe, Vinson & Elkins, Houston, T.X.; Kathryn Comerford Todd, Sheldon Gilbert, United States Chamber of Commerce National Chamber Litigation Center, Washington, D.C.; Amar Sarwal, Association of Corporate Counsel, Washington, D.C.), for Amicus Curiae the Chamber of Commerce of the United States of America, Association of Corporate Counsel, National Association of Manufacturers.

2

Joseph E. Neuhaus, Sullivan & Cromwell LLP, New York, N.Y. (Richard L. Mattiaccio, the New York City Bar Association, New York, N.Y.), for Amicus Curiae New York City Bar Association.

JACOBS, Circuit Judge:

Petitioner-Appellee Esther Kiobel filed a petition in the United States District Court for the Southern District of New York to subpoena documents under 28 U.S.C. § 1782 from Respondent-Appellant Cravath, Swaine & Moore LLP ("Cravath"), in aid of her lawsuit against Royal Dutch Shell ("Shell") in the Netherlands. Cravath is holding the documents because it represented Shell in prior litigation brought by Kiobel against Shell in that district. It was ultimately decided that United States courts lacked jurisdiction over that suit. See Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111 (2d Cir. 2010), aff'd, 569 U.S. 108 (2013).

On this appeal from the district court's grant of Kiobel's petition, Cravath argues (1) that the district court lacked jurisdiction under Section 1782 to grant the petition, and (2) that in any event, it was an abuse of discretion to do so.

We conclude that while the district court had jurisdiction over Kiobel's petition, it was an abuse of discretion to grant it. As we cautioned in Application of Sarrio, S.A., 119 F.3d 143 (2d Cir. 1997), an order compelling American counsel to deliver documents that would not be discoverable abroad, and that are in counsel's hands solely because they were sent to the United States for the purpose of American litigation, would jeopardize "the policy of promoting open communications between lawyers and their clients." Id. at 146.

I

In 2002, Kiobel and eleven other Nigerian plaintiffs brought suit in the Southern District of New York against four defendants affiliated with Shell. See

Kiobel v. Royal Dutch Petroleum Co., 456 F. Supp. 2d 457 (S.D.N.Y. 2006), aff'd in part, rev'd in part, 621 F.3d 111 (2d Cir. 2010), aff'd, 569 U.S. 108 (2013).  Kiobel invoked the district court's jurisdiction under the Alien Tort Statute, 28 U.S.C. § 1350, and alleged that the defendants were complicit in human rights abuses in Nigeria.

For the purpose of pretrial discovery, the district court consolidated Kiobel's case with other Alien Tort Statute cases arising out of the same events in Nigeria, the Wiwa cases.  See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000).  The consolidated cases generated a large volume of discovery, including depositions and documents.  The discovery materials were subject to a stipulated confidentiality order entered into in the Wiwa cases, and signed by Kiobel.  Most of the documents produced by Shell were marked "confidential," meaning that they were to be used "solely for purposes" of the then-pending Kiobel and Wiwa litigations.  Joint App'x at 58-59, 74.  The parties agreed to destroy or return each other's confidential material not later than thirty days after the respective cases' conclusions, and that the order would survive the end of litigation.  Any de-designation of confidential documents or modification of the confidentiality order required agreement by the parties to the confidentiality order, or could be ordered by the district court.  Cravath attorneys signed the stipulation in their capacity as Shell's counsel.

After consolidation, the Wiwa cases were settled.  In Kiobel, the district court dismissed some of the claims under the Alien Tort Statute for lack of subject-matter jurisdiction, and we dismissed the suit in full for lack of subject-matter jurisdiction.  Kiobel, 621 F.3d at 149.  The Supreme Court, observing that "all the relevant conduct took place outside the United States," affirmed on the ground "that the presumption against extraterritoriality applies to claims under the" Alien Tort Statute.  Kiobel, 569 U.S. at 124.

Years after the Supreme Court's decision, Kiobel prepared to file suit against Shell in the Netherlands, advancing the same allegations made in her Alien Tort Statute suit.  Kiobel now wants to deploy the discovery from her American litigation in her Dutch lawsuit, but is impeded by the confidentiality order which limits its use to only the U.S. Kiobel and Wiwa Alien Tort Statute

4

cases.  On October 12, 2016, Kiobel filed the pending Section 1782 petition to subpoeana Cravath and obtain "[a]ll deposition transcripts from the Kiobel and Wiwa cases," as well as "[a]ll discovery documents and communications produced to the plaintiffs by Shell and other defendants in Kiobel and the Wiwa cases."  Joint App'x at 10.

Section 1782 "provide[s] federal-court assistance in gathering evidence for use in foreign tribunals."  Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).  The pertinent statutory text is as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.  A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).  Section 1782 states that a court "*may* order" such discovery; so even if a court has jurisdiction under the statute to grant a petition, the decision to grant it is discretionary.  See In re Metallgesellschaft, 121 F.3d 77, 79 (2d Cir. 1997) ("The permissive language of § 1782 vests district courts with discretion to grant, limit, or deny discovery."); see also In re Esses, 101 F.3d 873, 875 (2d Cir. 1996) (per curiam) ("A review of a district court's decision under § 1782, therefore, has two components: the first, as a matter of law, is whether the district court erred in its interpretation of the language of the statute and, if not, the second is whether the district court's decision to grant discovery on the facts before it was in excess of its discretion.").

5

Kiobel argued that the documents that Cravath holds for Shell are needed to prepare her case because Dutch courts require a higher evidentiary standard at the filing stage than do U.S. courts.[2] Further, rather than starting discovery from scratch after over ten years in U.S. courts, access to the prior discovered materials is said to be the most efficient course of action. Kiobel did not subpoena Shell, only Cravath.

The district court agreed with Kiobel. After oral argument on December 20, 2016, the district court found that the cheapest and easiest thing to do was to grant Kiobel's petition and get the documents from Cravath. In view of the existing confidentiality order, Kiobel was directed to represent that the documents would only be used for drafting court papers in the contemplated Dutch proceedings, not for publicity, and the parties were required to sign a new stipulation. The parties complied with the court's directive, though Cravath advised that, under the terms of the prior stipulation, it lacked authority to de-designate documents because it was not a party to the original Alien Tort Statute suit, and Shell was not before the court.

Under the new stipulation, Shell has no right to enforce a breach of confidentiality. In the event of disputes, Cravath and Kiobel can return to the district court, but because the district court has no authority over proceedings in the foreign forum, the parties may only "request" confidential treatment for the documents in the Netherlands. Joint App'x at 241.

The district court's subsequent opinion first concluded that it had jurisdiction to consider Kiobel's petition. The court rejected Cravath's argument

---

[2] A declaration from Kiobel's Dutch attorney stated that the Dutch court system has no procedure for the preparatory phase of a case, so he "must complete" the collection of evidence prior to filing the writ of summons. Joint App'x at 86. Once a lawsuit is pending, Kiobel can then submit additional evidence, and can file an "exhibition request" to gain discovery, though this is time consuming and, in the view of Kiobel's counsel, unnecessary since the pertinent evidence is already available in the U.S. Id.

that it was not the real party from whom discovery was sought, deeming it irrelevant because Section 1782 asks only whether the respondent resides in the district in which discovery is sought, as Cravath does. Finding that it had jurisdiction to consider Kiobel's petition, the district court granted it because Kiobel required the documents to file suit, and it would not be burdensome for Cravath to provide them.

On appeal, Cravath challenges both the district court's finding that it had jurisdiction and its discretionary grant of the petition. As to jurisdiction, Cravath argues, inter alia, that: the documents Kiobel seeks belong to Shell; Cravath holds them only as counsel; and Shell neither resides nor is found in the Southern District of New York. As to the discretionary grant of the petition, Cravath argues: that Kiobel's petition is an attempted end-run around the more limited discovery procedures of the Netherlands where Shell is found and being sued; and granting discovery of materials Shell produced in reliance on confidentiality orders in prior litigation would undermine confidence in court protective orders.

## II

A district court possesses jurisdiction to grant a Section 1782 petition if:

> (1) . . . the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) . . . the discovery [is] for use in a proceeding before a foreign tribunal, and (3). . . the application [is] made by a foreign or international tribunal or any interested person.

Esses, 101 F.3d at 875 (internal quotation marks omitted). We review de novo a district court's ruling that a petition satisfies Section 1782's jurisdictional requirements. See Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 117 (2d Cir. 2015). Cravath's statutory challenge on appeal is only to the first jurisdictional requirement.

The district court observed that Cravath unsuccessfully made the argument that a foreign client (Deutsche Telekom) and not Cravath was the

7

actual party from which discovery was sought in <u>In re Schmitz</u>, 259 F. Supp. 2d 294 (S.D.N.Y. 2003). <u>Schmitz</u> ruled that "[a]pplication of section 1782 does not involve an analysis of . . . why a respondent has the documents. It is sufficient that respondents reside in this district[.]" <u>Id.</u> at 296.

The district court also relied on <u>Ratliff v. Davis Polk & Wardwell</u>, 354 F.3d 165, 170-71 (2d Cir. 2003), which ruled discoverable under Section 1782 documents that were held by a law firm in the U.S. on behalf of a foreign client and voluntarily produced to a third party. The district court drew an analogy between Shell's previous production of documents to Kiobel and the previous production (to the SEC) in <u>Ratliff</u>. Lastly, the district court relied on Federal Rules of Civil Procedure 34(a)(1) and 45(1)(A)(iii) for the proposition that "relevant documents within the 'possession, custody, or control' of the recipient of a discovery request are generally discoverable, regardless of who owns or created those documents." Joint App'x at 280.

On appeal, Cravath raises two jurisdictional challenges:

- Since jurisdiction under Section 1782 is subject to established limits on federal courts' power to compel production of privileged materials, a district court cannot order a law firm to produce client documents that would fall beyond the statutory reach of a subpoena if the documents had instead been maintained by the client. Since documents here are not discoverable from Shell at this stage under both the protective order and the Netherlands' more restrictive discovery practices, they are similarly not discoverable from Cravath.

- A court cannot compel a law firm to produce a client's documents when (as here) the client is not subject to the court's personal jurisdiction.

We are not persuaded.

The first statutory requirement for jurisdiction is that the "person from whom discovery is sought resides or is found in the district of the district court

8

to which the application is made."  Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (alteration and internal quotation marks omitted).  There is no express mandate to consider a principal-agent relationship, or whether documents being held by the subpoenaed party belong to a foreign party.  See Mees v. Buiter, 793 F.3d 291, 298 (2d Cir. 2015) ("in several other contexts we and the Supreme Court have declined to read into [Section 1782] requirements that are not rooted in its text").  A law firm's representation of a foreign client is a factor worth considering; but it is a discretionary factor, not a jurisdictional requirement.  Schmitz, 376 F.3d at 85.  The district court correctly determined that it possessed jurisdiction over Kiobel's petition.

### III

Once a district court is assured that it has jurisdiction over the petition, it "may grant discovery under § 1782 in its discretion."  Mees, 793 F.3d at 297 (internal citation omitted).  We review the decision to grant a Section 1782 petition for abuse of discretion.  See In re Edelman, 295 F.3d 171, 175 (2d Cir. 2002).

To guide district courts in the decision to grant a Section 1782 petition, the Supreme Court in Intel, 542 U.S. 241, discussed non-exclusive factors (the "Intel factors") to be considered in light of the "twin aims" of Section 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  Metallgesellschaft, 121 F.3d at 79 (internal quotation marks omitted).  The four Intel factors are:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";

9

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the request is "unduly intrusive or burdensome."

Intel, 542 U.S. at 264-265.

The district court determined that Kiobel's petition should be granted because: Cravath is not a party to the Dutch litigation; not all of the documents Kiobel sought were likely to be still in Shell's possession over a decade after litigation began in the U.S.; the Netherlands does not prohibit or restrict parties from gathering evidence similar to what is sought from Cravath in the U.S., and there was no evidence that the courts of the Netherlands would be unreceptive to U.S. discovery; and the production would be minimally burdensome for Cravath.

Cravath contends on appeal that the district court abused its discretion because: the petition in effect seeks discovery from Shell, which is subject to jurisdiction in the foreign tribunal; use of a Section 1782 petition to discover these documents is opposed by the Netherlands; the petition attempts to circumvent the more limited Dutch rules of discovery; and the petition threatens the confidentiality of the materials sought.

We conclude that the district court erred in its analysis and application of the four Intel factors. As the district court acknowledged in its opinion, under existing precedent in this Circuit, when the real party from whom documents are sought (here, Shell) is involved in foreign proceedings, the first Intel factor counsels against granting a Section 1782 petition seeking documents from U.S. counsel for the foreign company. See Schmitz, 376 F.3d at 85 ("Although technically the respondent in the district court was Cravath, for all intents and

10

purposes petitioners are seeking discovery from DT, their opponent in the German litigation. Intel suggests that because DT is a participant in the German litigation subject to German court jurisdiction, petitioner's need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" (quoting Intel, 542 U.S. at 264)). Further, under the third Intel factor, statements made by Kiobel's counsel demonstrate that Kiobel is trying to circumvent the Netherlands' more restrictive discovery practices, which is why they are seeking to gather discovery from Cravath in the U.S.[3]

The Intel factors are not to be applied mechanically. A district court should also take into account any other pertinent issues arising from the facts of the particular dispute. See Intel, 542 U.S. at 264-65 ("We note below factors that bear consideration in ruling on a § 1782(a) request . . . . We decline, at this juncture, to adopt supervisory rules. Any such endeavor at least should await further experience with § 1782(a) applications in the lower courts."). Looking at the facts of this dispute reinforces our conclusion that the district court abused its discretion in granting the petition. We consider in particular two cases that analyzed Section 1782 petitions seeking documents from U.S. legal counsel: Sarrio, 119 F.3d 143 and Ratliff, 354 F.3d 165.

Sarrio militates in favor of the right of Cravath to invoke its client's rights under the confidentiality order. In Sarrio, the plaintiff in a foreign lawsuit filed a Section 1782 petition to discover documents of the opposing party from Chase Bank. The Bank, which held the documents in its capacity as a lender to the defendant, had sent the documents to the U.S. for review by its in-house counsel. The district court's denial of the petition was reversed on appeal after Chase withdrew its claim of attorney-client privilege. But Sarrio's discussion of

---

[3] In a declaration, Kiobel's counsel stated that while Kiobel may "request" copies of documents from Shell under section 843a of the Dutch Code of Civil Procedure, "it is hardly possible for a party to obtain evidence from another party pre-trial" in the Netherlands. Joint App'x at 196. So to bypass Dutch discovery restrictions and gain access to documents she could not otherwise acquire, Kiobel is turning to Section 1782.

privilege in the Section 1782 context is instructive.  Sarrio followed Fisher v. United States, 425 U.S. 391 (1976), which determined that when a client is privileged from producing documents, so too is the client's counsel.  Id. at 404. Building on this, Sarrio explained that while "Fisher was expressed in terms of . . . common law or constitutional privilege," its reasoning also applied to protect a foreign party's documents that are not amenable to a subpoena in the hands of the foreign party, even if the court can subpoena the documents from the foreign party's U.S. counsel under Section 1782.  Sarrio, 119 F.3d at 146.  This is because the principle articulated in Fisher:

> arose from the policy of promoting open communications between lawyers and their clients.  That policy would be jeopardized if documents unreachable in a foreign country became discoverable because the person holding the documents sent them to a lawyer in the United States for advice as to whether they were subject to production.

Id.

Ratliff followed Sarrio.  U.S. plaintiffs suing a Dutch company for securities fraud in the U.S. sought documents from the defendant's accounting firm in the Netherlands.  Ratliff, 354 F.3d at 167.  When the Dutch court denied access, the plaintiffs invoked Section 1782 to obtain the documents from the accounting firm's U.S. counsel, Davis Polk & Wardwell.  Id.  The documents sought had previously been voluntarily turned over to the Securities and Exchange Commission.  Id.  In response to the petition, Davis Polk argued that documents cannot be subpoenaed from counsel if the court does not have jurisdiction over the owner.  Id.  The district court agreed and denied the petition.

When Davis Polk on appeal relinquished its claim of privilege, it was unclear whether the disclaimed privilege was attorney-client privilege or "the protection discussed in Sarrio that would protect documents regardless of their content."  Id. at 170.  The issue as to which privilege was relinquished was obviated, however, because the accounting firm had voluntarily authorized

12

Davis Polk to disclose the documents to a third party, making the documents unprotected from discovery and thus amenable to a Section 1782 petition.

Therefore, although our Court in <u>Ratliff</u> held that Davis Polk was subject to appellant's subpoena, <u>Ratliff</u> did not disturb <u>Sarrio's</u> suggestion that a district court should not exercise its discretion to grant a Section 1782 petition for documents held by a U.S. law firm in its role as counsel for a foreign client if the documents are undiscoverable from the client abroad, because this would disturb attorney-client communications and relations. <u>Sarrio</u>, 119 F.3d at 146; <u>Ratliff</u>, 354 F.3d at 170.

Moreover, <u>Ratliff's</u> holding that third-party disclosure vitiated Davis Polk's privilege argument does not apply in this case. Although Shell produced the documents at issue to its adversaries in the Alien Tort Statute litigation, that disclosure was not "public," as the <u>Ratliff</u> court found E&Y's disclosure in that case to have been. <u>See</u> <u>Ratliff</u>, 354 F.3d at 170 ("In light of the strong policy considerations favoring full and complete discovery we are hard pressed to suppress documents that have already seen the bright light of public disclosure."). Rather, Shell disclosed the documents under a confidentiality order that expressly barred Kiobel from using the documents in any other litigation. As a practical matter, the combination of the confidentiality order and the more restrictive Dutch discovery practices makes the documents at issue undiscoverable from Shell in the Netherlands. To now modify the confidentiality order that Shell and Kiobel agreed to, and thereby provide access to the documents, would be perilous for multiple reasons, a feature of this case that makes it extraordinary, and possibly unique.

To begin, the district court's ruling would undermine confidence in protective orders. Protective orders "serve the vital function . . . of secur[ing] the just, speedy, and inexpensive determination of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice." <u>S.E.C. v. TheStreet.Com</u>, 273 F.3d 222, 229 (2d Cir. 2001) (internal quotation marks omitted, alterations in original). Without protective orders, "litigants would be subject to needless annoyance, embarrassment, oppression, or undue burden or

expense." Id. (internal quotation marks omitted). This is why there is "a strong presumption against the modification of a protective order," and why, "absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need," we should not countenance such modifications. Id. at 229 (alteration in original). The decision to alter the confidentiality order without Shell's participation, and without considering the costs of disclosure to Shell, makes this case exceptional, and mandates reversal. See Mees, 793 F.3d at 302 (explaining that under Intel, district courts should apply the standard from Federal Rule of Civil Procedure 26 to assess when a discovery request is unduly burdensome); see also In re Catalyst Managerial Servs., DMCC, 680 Fed. App'x 37, 39 & n.1 (2d Cir. 2017) (discussing a party's argument about the burdens of discovery on a third-party putative foreign defendant in the context of the fourth Intel factor).

Moreover, Kiobel did not (presumably because she cannot) provide the U.S. courts with assurance that Dutch courts will enforce the protective orders that safeguard the confidentiality of Shell's documents. It is perilous to override the confidentiality order; doing so would inhibit foreign companies from producing documents to U.S. law firms, even under a confidentiality order, lest Section 1782 become a workaround to gain discovery. This would entail several unintended consequences.

The Supreme Court has stressed the need for "full and frank communication between attorneys and their clients," which "promote[s] broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); see also In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1036–37 (2d Cir. 1984) ("The availability of sound legal advice inures to the benefit not only of the client who wishes to know his options and responsibilities in given circumstances, but also of the public which is entitled to compliance with the ever growing and increasingly complex body of public law."). If foreign clients have reason to fear disclosing all pertinent documents to U.S. counsel, the likely results are bad legal advice to the client, and harm to our system of litigation.

14

In order to avoid potential disclosure issues under Section 1782, U.S. law firms with foreign clients may be forced to store documents and servers abroad, which would result in excessive costs to law firms and clients. Alternatively, U.S. law firms may have to return documents to foreign clients (or destroy them) as soon as litigation concludes. As amicus the New York City Bar Association notes, its Ethics Opinion 780 states that law firms have an interest in retaining documents where needed to protect themselves from accusations of wrongful conduct. So U.S. law firms may be harmed if they must destroy or return a foreign client's documents as soon as possible once a proceeding is completed. Or foreign entities may simply be less willing to engage with U.S. law firms.

Therefore, in light of the <u>Intel</u> factors, the respect owed to confidentiality orders, and the concerns for lawyer-client relations raised in <u>Sarrio</u>, the district court abused its discretion in granting Kiobel's petition.

\* \* \*

The order of the district court is **REVERSED**. We **REMAND** for the district court to revise its order to conform with this opinion.