**H. Donald RATLIFF, Frank H. Cullen, and John J. Jarvis, Plaintiffs–Appellants,**

**v.**

**DAVIS POLK & WARDWELL, Appellee,**

**Baan Company, N.V., Amal M. Johnson, Jaan Baan and Tom Tinsley, Defendants.**

**Docket No. 03–7194.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 10, 2003.

Decided: Dec. 30, 2003.

Philip R. Schatz, Wrobel & Schatz LLP, New York, NY, for Plaintiffs–Appellants.

Jerome G. Snider, Davis, Polk & Wardwell, New York, NY, (Guy Miller Struve, Hayward H. Smith, of counsel), for Appellee (pro se).

Before: NEWMAN, SOTOMAYOR, and WESLEY, Circuit Judges.

WESLEY, Circuit Judge:

Plaintiffs appeal from the district court's denial of their motion to compel non-party appellee Davis Polk & Wardwell ("Davis Polk")—a New York law firm—to comply with a subpoena to produce non-privileged documents in its possession. The documents belong to a Dutch firm, Ernst & Young Accountants ("E & Y"), and came under Davis Polk's control during its representation of E & Y in connection with a now-resolved Securities and Exchange Commission ("SEC") investigation. The district court denied plaintiffs' motion to compel, relying solely on this Court's decision, *In re Sarrio, S.A.*, 119 F.3d 143 (2d Cir.1997). The court held that E & Y was not subject to the court's subpoena power by virtue of its location in the Netherlands and that, under *Sarrio*, the documents could not be obtained by subpoenaing its law firm Davis Polk. We now reverse and remand the matter.

## BACKGROUND

In the 1990s E & Y, a Dutch accounting firm located in the Netherlands, served as the outside auditor of defendant Baan Company ("Baan"). Amid press reports that American authorities were inquiring into Baan's accounting practices, E & Y ended its relationship with Baan in early 1998. The reports proved true; the SEC began an inquiry into E & Y's 1995–1997 audits of Baan. Although not subject to the SEC's personal jurisdiction, E & Y cooperated through its counsel—Davis Polk—and voluntarily provided documents and testimony in response to informal commission requests. E & Y sent documents to Davis

Polk for transmission to the SEC. The firm retained transcripts of testimony given before the SEC and other documents related to the investigation. E & Y admitted no wrongdoing, but settled the SEC investigation with a penalty payment in June 2002.

Meanwhile, in 1999 plaintiffs commenced a securities fraud action in the United States District Court for the Northern District of Georgia against Baan and three other defendants, focusing on a 1998 stock transaction between the parties. Plaintiffs initially sought documents concerning the SEC investigation from the defendants and the SEC. Those efforts proved unsuccessful. Invoking the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature* Mar. 18, 1970, 23 U.S.T. 2555, plaintiffs sought the production of the documents directly from E & Y in the Netherlands [1] and subsequently served a subpoena on Davis Polk. Davis Polk objected to the subpoena, arguing that its client E & Y was "not subject to the jurisdiction of U.S. courts" and that the subpoena was overbroad and the documents were irrelevant. Plaintiffs moved to compel production over Davis Polk's objections, and "expressly offered to limit the requested documents" to transcripts of testimony before the SEC, correspondence with the SEC, and documents produced to the SEC in connection with the SEC investigations.

Davis Polk conceded at the district court that it was "not claiming attorney-client privilege" as to the requested documents, but rather argued that under *Sarrio* documentary evidence is not available from a lawyer custodian, even absent attorney-client privilege, if the court does not have jurisdiction over the client/document own-

---

**1.** Although still pending when the subpoena was served on Davis Polk, post-argument documentation submitted by plaintiffs indicates

that the request was denied by oral decision of a Subdistrict Court Judge in Amsterdam on August 13, 2003.

er. The district court, relying on *Sarrio,* agreed with Davis Polk and denied the motion to compel, reasoning that since E & Y was not subject to the court's jurisdiction, the documents obtained by Davis Polk through and in connection with its representation of E & Y were similarly unreachable. The court did not address Davis Polk's other arguments opposing disclosure.

## DISCUSSION

 We review the district court's refusal to enforce a subpoena for a clear abuse of discretion. *Logan v. Bennington College Corp.,* 72 F.3d 1017, 1027 (2d Cir. 1995); *Cruden v. Bank of New York,* 957 F.2d 961, 972 (2d Cir.1992). Where a district court exercises its discretion premised on the misapplication of a legal principle, the court by definition abuses its discretion and makes an error of law. *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *In re Grand Jury Subpoenas,* 318 F.3d 379, 383 (2d Cir.2003). The resolution of this motion turns on the district court's application of *In re Sarrio, S.A.,* 119 F.3d 143 (2d Cir.1997), and thus presents us with an issue of law.

*Sarrio* involved a contract dispute in the Spanish courts between Sarrio, S.A., a Spanish company, and the Kuwait Investment Authority (KIA) and a group of KIA's subsidiaries. Branch offices of Chase Manhattan Bank, N.A. ("Chase") in Spain and England had been involved in several loans to the subsidiaries. Those transactions were, in Sarrio's opinion, relevant to the Spanish litigation. Chase was headquartered in New York. As a result, Sarrio, relying on 28 U.S.C. § 1782,[2] asked Chase to produce the commercial agreements in New York. Sarrio provided Chase's New York counsel with a proposed draft of the subpoena it intended to employ in the request. Counsel for Chase directed the bank offices in question to send their files to New York to allow counsel to review the documents and "provide legal advice about compliance with a discovery demand." *Sarrio,* 119 F.3d at 145. When Sarrio finally served the subpoena, it was limited to documents located in the United States, including documents sent from Chase's branch offices abroad. The defendants objected to disclosure on several grounds. Significantly, Chase objected to the subpoena as it called for the production of documents protected by the attor-

---

2. The version of § 1782 in effect at the relevant time provided:

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a ... request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.... The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement

or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

(b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

28 U.S.C. § 1782 (1994).

ney-client privilege. Chase contended that the sole purpose of delivering the documents to the United States was to allow Chase's attorney to review them in light of the litigation and discovery demand and that the documents would not be subject to a subpoena had they remained overseas notwithstanding Chase's presence in New York. The district court found that the statute (28 U.S.C. § 1782) could not compel discovery of documents located in foreign countries and that the attorney-client privilege shielded Chase from producing documents delivered to the United States solely for review by counsel. *In re Sarrio, S.A.,* No. 9–372, 1995 U.S. Dist. LEXIS 14822, 1995 WL 598988, *3 (S.D.N.Y. Oct.11, 1995).

On appeal this Court assumed, without deciding, "that the district court was correct that discovery under § 1782 may reach only evidence located in the United States." *Sarrio,* 119 F.3d at 146. The Court then turned to Chase's claim of privilege. The Court relied on the policy underpinnings of the privilege articulated in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and reasoned that "where documents unobtainable by subpoena while in the possession of the client are transferred to a lawyer *to obtain legal advice,* making the documents available to process would defeat the purposes of the attorney-client privilege." *Sarrio,* 119 F.3d at 146 (emphasis added). *Fisher* involved a taxpayer's assertion of a Fifth Amendment privilege over personal documents subpoenaed by the IRS after their delivery to his attorney. The Supreme Court rejected the taxpayer's Fifth Amendment argument but did go on to consider whether the IRS subpoena ran afoul of the attorney-client privilege. *Fisher,* 425 U.S. at 401–02, 96 S.Ct. 1569. The Court noted that the privilege is premised on encouraging clients to be fully truthful with their attorneys so that counsel can give fully informed legal advice. *Id.* at 403, 96 S.Ct. 1569. Thus if the documents were unobtainable while in the hands of a client by reason of constitutional privilege or common law principle the same would be true when the documents were delivered to the client's attorney for the purpose of formulating legal advice. The *Sarrio* court noted a similar analysis would apply to documents that were outside the jurisdictional reach of a subpoena. *Sarrio,* 119 F.3d at 146. Exposing documents—not otherwise subject to production—to discovery demands after delivery to one's attorney whose office was located within the sweep of a subpoena would produce a curious and unacceptable result. The price of an attorney's advice would be disclosure of previously protected matters. That "price" would not only chill open and frank communications between attorneys and their clients, it would disenfranchise local counsel from representing foreign entities.

The *Sarrio* opinion ultimately concluded that, because of changed circumstances during the course of the appeal, it was not necessary to rule definitively whether documents sent from abroad to a law firm in the United States in order to obtain legal advice were protected by aspects of the attorney-client privilege.[3] That changed circumstance was Chase's decision not to assert the attorney-client privilege.[4] *See*

---

3. "A change of circumstances on appeal makes it unnecessary for us to decide ... whether the attorney-client privilege shields documents undiscoverable abroad but transferred to an attorney in the United States for

advice on their amenability to [a] § 1782 subpoena." *Sarrio,* 119 F.3d at 147.

4. After the district court ruled in its favor, Chase sent the documents abroad, thereby eliminating the claim of privilege and render-

*Sarrio,* 119 F.3d at 147. In the pending case, Davis Polk, on behalf of its client E & Y, has also stated that the attorney-client privilege is not being asserted. However, it is not entirely clear whether Davis Polk means that the documents themselves contain no disclosures protected by the attorney-client privilege, or whether it means that it is not asserting the protection discussed in *Sarrio* that would protect documents regardless of their content. We think it more likely that Davis Polk means to disclaim only that the documents contain privileged statements.

■ In any event, even if Davis Polk is declining to assert only that the documents contain privileged statements and is claiming the protection discussed in *Sarrio,* that protection, even if it had been the holding of *Sarrio,* would not avail Davis Polk in this case. Even if we assume that, when the documents were sent by E & Y to Davis Polk to secure the firm's legal advice, they were entitled to protection, such protection was lost when E & Y voluntarily authorized Davis Polk to send the documents to the SEC.[5] E & Y might be entitled to protection if it sends documents to its law firm to obtain legal advice. But any such protection does not continue when the client voluntarily discloses the documents to a third party, here a government agency. And nothing in *Sarrio* or any other decision applying the attorney-

client privilege provides protection for the transcripts of the SEC proceedings or correspondence with the SEC.[6]

■ Discovery rules "are to be accorded a broad and liberal treatment [ ] to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark." *Schlagenhauf v. Holder,* 379 U.S. 104, 115, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (internal quotations and citation omitted); *see also United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ("[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."). In light of the strong policy considerations favoring full and complete discovery we are hard pressed to suppress documents that have already seen the bright light of public disclosure. No doubt the assistance rendered to the SEC by E & Y in transmitting the documents created a favorable impression for E & Y but it did not insulate its documents from review by other interested parties. Indeed, documents held by an attorney in the United States on behalf of a foreign client, absent privilege, are as susceptible to subpoena as those stored in a warehouse within the district court's jurisdiction. Documents obtain no special protection because they are housed in a

---

ing the objection moot. *Sarrio,* 119 F.3d at 147 n. 3, 148. Ultimately, this Court remanded the matter for further consideration of Sarrio's entitlement to discovery under § 1782.

**5.** This Court has previously rejected a "limited waiver" rule that would preserve attorney-client privilege even after documents had been disclosed to a third party, such as the SEC. *See In re John Doe Corp.,* 675 F.2d 482, 489 (2d Cir.1982); *see also In re Grand Jury Proceedings,* 219 F.3d 175, 184 (2d Cir.2000) ("[W]here a corporation has disseminated information to the public that reveals parts of

privileged communications or relies on privileged reports, courts have found the privilege waived.").

**6.** It should be emphasized that plaintiffs seek solely "the transcripts of testimony before the SEC, correspondence with the SEC, and documents produced to the SEC." This opinion assumes that limitation—the parties appear to do so on appeal—and should not be construed as deciding any issues related to any other documents that may reflect the attorney work product of Davis Polk or that may be covered by any other privilege.

law firm; "[a]ny other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney." *Colton v. United States,* 306 F.2d 633, 639 (2d Cir.1962).[7]

## CONCLUSION

Accordingly, the order of the district court is reversed and the case remanded for consideration of any remaining issues.

---

**7.** The timing of the Hague Convention request vis-a-vis the subpoena, and the request's ultimate success or failure, is irrelevant on this appeal. "[W]e cannot accept [Davis Polk's] invitation to announce a new rule of law that would require first resort to Convention procedures whenever discovery is sought from a foreign litigant." *Société Nationale Industr-* *ielle Aérospatiale v. United States Dist. Court for the S. Dist. of Iowa,* 482 U.S. 522, 542–43, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987). The Hague Convention has no application to documents sought from Davis Polk in the United States, as opposed to those requested from E & Y in the Netherlands.