25-1563-cv

# United States Court of Appeals

# For the Second Circuit

August Term 2025

Argued:  December 4, 2025
Decided: February 20, 2026

No. 25-1563-cv

IN RE: EX PARTE APPLICATION OF SBK ART LLC

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SBK ART LLC,

*Petitioner-Appellee*,

*v.*

AKIN GUMP STRAUSS HAUER & FELD LLP,

*Respondent-Appellant*.

Appeal from the United States District Court
for the Southern District of New York
No. 1:24MC00147, Engelmayer, *Judge*.

Before:      ROBINSON, MERRIAM, *Circuit Judges*, and STEIN, *District Judge.**

Respondent-appellant Akin Gump Strauss Hauer & Feld LLP ("Akin") appeals from an order of the United States District Court for the Southern District of New York (Engelmayer, *J.*) granting the petition of petitioner-appellee SBK ART LLC ("SBK") for discovery in aid of foreign litigation under 28 U.S.C. §1782.  SBK sought documents and deposition testimony from Akin for use in certain pending civil proceedings and in anticipated litigation in Europe.  The District Court granted SBK's petition but limited the discovery available to a small subset of the discovery that SBK had sought in its petition.

Akin principally argues on appeal that the District Court abused its discretion because the documents sought by SBK are not discoverable from Akin's client in any of the foreign jurisdictions in which litigation is pending or contemplated.  Relying on our decision in *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018), Akin contends that a district court should not exercise its discretion under Section 1782 to allow discovery of documents held by a U.S. law firm when those documents are not discoverable from the firm's foreign client abroad.  We disagree with Akin and conclude that the District Court did not abuse its discretion.  Accordingly, we **AFFIRM.**

JAMES E. TYSSE (Anne M. Evans, Sean M. Nolan, Daniel W. Slemmer, Akin Gump Strauss Hauer & Feld LLP, New York, NY, Lide E. Paterno, Kristen E. Loveland, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, *on the brief*), Akin Gump Strauss Hauer & Feld LLP, Washington, DC, *for Respondent-Appellant*.

---

* Judge Sidney H. Stein, of the United States District Court for the Southern District of New York, sitting by designation.

2

ROBERT S. LANDY (Bryan W. McCracken, *on the brief*), Ford O'Brien Landy LLP, New York, NY, *for Petitioner-Appellee.*

SARAH A. L. MERRIAM, *Circuit Judge*:

Respondent-appellant Akin Gump Strauss Hauer & Feld LLP ("Akin") appeals from a May 30, 2025, order of the United States District Court for the Southern District of New York (Engelmayer, *J.*) granting the petition of petitioner-appellee SBK ART LLC ("SBK") for discovery in aid of foreign litigation under 28 U.S.C. §1782. Section 1782 permits a district court, "upon the application of any interested person," to order a person within its jurisdiction "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. §1782(a). SBK sought documents and deposition testimony from Akin for use in pending civil proceedings in the General Court of the European Union and the Civil Court of Malta and in anticipated litigation in the Netherlands or other foreign courts. Specifically, SBK sought to "discover and expose facts and evidence that demonstrate the existence of an unlawful scheme to cause damages to SBK ART and ultimately deprive it of its ownership rights and benefits in a major food and retail company based in Zagreb, Croatia, called Fortenova Grupa d.d." Joint

App'x at 353.

The Magistrate Judge (Tarnofsky, *M.J.*) issued a report and recommendation ("R&R") in which she recommended that the District Judge grant SBK's petition for discovery, but that the order be limited to a small subset of the discovery sought. *See In re SBK ART LLC* ("*SBK I*"), No. 1:24MC00147 (PAE)(RFT), 2024 WL 4264893 (S.D.N.Y. July 30, 2024). The District Judge, over Akin's objections, adopted the R&R in its entirety and granted the petition, authorizing SBK to seek discovery from Akin within the R&R's narrowly defined parameters. *See In re SBK ART LLC* ("*SBK II*"), No. 1:24MC00147(PAE)(RFT), 2025 WL 1537474 (S.D.N.Y. May 30, 2025).

Akin principally argues on appeal that the District Court abused its discretion by granting the Section 1782 petition because the documents sought by SBK are not discoverable from Akin's client in any of the foreign jurisdictions in which litigation is pending or contemplated. Relying on our decision in *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018), Akin contends that a district court should not exercise its discretion under Section 1782 to allow discovery of documents held by a U.S. law firm when those documents are not discoverable from the firm's client abroad. Akin, however, reads *Kiobel*

4

too broadly; *Kiobel* does not impose a "foreign discoverability" requirement under Section 1782, and because *Kiobel* is distinguishable, it does not control.

We conclude that the District Court did not abuse its discretion in granting the petition under Section 1782. Akin is entitled to object to any discovery sought on the grounds that production imposes undue burdens or unduly interferes in its attorney-client relationship. But such objections are properly addressed not at the Section 1782 stage – which merely opens the gate to discovery – but, after a Section 1782 petition is granted, through the ordinary rules governing discovery under the Federal Rules of Civil Procedure.

We therefore AFFIRM the District Court's order granting SBK's petition.

## **BACKGROUND**

I.      **Factual Background**[1]

A.      **Parties**

Akin[2] is a multinational law firm that served as lead international and

---

[1] The facts are drawn from: (1) assertions by SBK in its Section 1782 petition; (2) evidence submitted by both parties to the District Court; (3) the District Court opinions; and (4) other documents of record. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 124 n.1 (2d Cir. 2017). The facts are undisputed unless otherwise stated.

[2] SBK filed its petition to take discovery from both Akin Gump Strauss Hauer & Feld LLP, the American multinational law firm, and Akin Gump LLP, the entity that employs Akin's United Kingdom solicitors. Only the former is a party to this appeal;

5

English law counsel to Fortenova Grupa d.d. ("Fortenova"), a major food and retail company based in Croatia. Akin represented Fortenova "in connection with a variety of corporate, sanctions, and other matters, since April 2019." Joint App'x at 382. SBK is a special purpose vehicle that was initially owned by the Russian bank Sberbank for the purpose of holding Sberbank's interest in Fortenova. Because of its ownership by the Russian bank, SBK became subject to various international sanctions in 2022 following Russia's invasion of Ukraine. SBK held a 41.82% interest in Fortenova, including through depository receipts ("DRs") issued by Fortenova's ultimate parent company, Fortenova Group STAK Stichting ("STAK").

## B. Underlying Events

The litigation that gives rise to SBK's petition stems from a series of events culminating in Fortenova's corporate restructuring, which deprived SBK of its ownership interest in Fortenova. Fortenova restructured to reduce the risk of violating sanctions rules applicable to Russian entities because of its affiliation with SBK, which was controlled by Sberbank.

On October 31, 2022, Sberbank sold SBK to H.E. Saif Jaffar Suhail Markhan

---

we use "Akin" to refer to both. Akin acknowledged at oral argument that all of its attorneys have the same employer.

6

Alketbi ("Mr. Alketbi"), an Emirati investor. SBK asserts that Mr. Alketbi "was and continues to be free from any sanctions," which in turn means that "SBK ART also ceased to be subject to any sanctions related to Sberbank" following the sale. Joint App'x at 358. In spite of the sale of SBK, "Fortenova concluded that it must continue to treat SBK as a sanctioned entity by virtue of it being owned and/or controlled by Sberbank." Joint App'x at 386. Among other things, Fortenova asserted that it was unable to verify that the transaction between Sberbank and Mr. Alketbi resulted in a change of control of SBK. Fortenova therefore began its efforts to remove SBK from its capital structure.

Akin advised Fortenova in connection with these issues. On December 14, 2022, Akin provided STAK[3] with a memorandum entitled "Report on [Know Your Customer] Documents in Connection with the Transaction between Sberbank and Mr. Alketbi." Joint App'x at 149. The parties refer to this as the "Akin Opinion."

In preparing the Akin Opinion, Akin reviewed certain documents that SBK and Mr. Alketbi provided to Fortenova management related to the sale of SBK. Akin concluded that the information in those documents was "insufficient to

_____

[3] It appears that Akin represented multiple Fortenova entities, including STAK and the indirect holding company Fortenova Group TopCo B.V.

7

confirm that the transactions under review are in compliance with applicable law, specifically with EU sanctions regulations," and "insufficient to confirm that the transactions under review have resulted in SBK no longer being subject to the asset freeze restrictions imposed on its purported (former) parent company Sberbank." Joint App'x at 149. Akin also opined that the information was "indicative of criminal sanctions breaches having been committed by EU persons in relation to the transactions under review." Joint App'x at 149. Akin ultimately advised its client that "[STAK] cannot recognize the exercise of voting rights by SBK as this would potentially be in breach of EU sanctions regulations and could potentially expose [STAK] for money laundering offences." Joint App'x at 150.

Two days later, on December 16, 2022, the EU Council imposed sanctions against SBK on the basis that it is "a company in the Russian Federation associated with Sberbank . . . [and] Sberbank retains effective control over SBK ART LLC notwithstanding the purported transfer of its shares to a businessman in the United Arab Emirates." Joint App'x at 359-60 (citation modified). SBK contends that these sanctions resulted from lobbying efforts by Fortenova and Open Pass Limited ("Open Pass"), which is Fortenova's largest non-sanctioned equity holder. According to SBK, Fortenova management leaked the Akin

Opinion to the EU Council, and "the Akin Opinion was one of the key documents that was assessed by the Council when deciding on the introduction of sanctions." Joint App'x at 2146.[4]

Because SBK was sanctioned, it was not permitted to attend or vote at Fortenova DR holder meetings. In January 2023, at a meeting of DR holders, changes to Fortenova's corporate governance structure (the "Corporate Changes"), proposed by Open Pass, were approved. SBK was not permitted to vote on these changes, which made Open Pass "the de facto deciding DR Holder." Joint App'x at 361. In December 2023, Fortenova's non-sanctioned DR holders voted to approve the sale of one of its holding companies, Fortenova Group MidCo B.CV. ("MidCo"), "to a new holding structure capitalized by its non-sanctioned equity holders, and underwritten by the largest non-sanctioned equity holder, Open Pass." Joint App'x at 387-88. As a result of this transaction, SBK lost its interest in Fortenova for, according to SBK, "an incredibly undervalued price." Appellee's Br. at 7.

---

[4] This opinion cites to portions of the parties' Sealed Joint Appendix only to the extent that the information has been publicly revealed by the parties in unsealed submissions, or by rulings in the District Court.

### C. Foreign Litigation

SBK initiated multiple proceedings in connection with these events; two are relevant to this appeal. First, on February 26, 2023, SBK filed an Action for Annulment (the "EU Action") against the EU Council in the General Court of the European Union, challenging the EU Council's imposition of sanctions against SBK. Second, on August 4, 2023, SBK sued Open Pass, STAK, and certain directors or shareholders of both entities, in the Malta Civil Court (the "Malta Action"), seeking damages arising from "the changes to the corporate governance in Fortenova Group in favor of Open Pass and its Croatian owners." Joint App'x at 355.

SBK asserts that it also intends to file suit in the Netherlands or another foreign court (the "Anticipated Litigation") "as a result of the MidCo Sale, . . . to seek to recover damages proximately caused by Open Pass and the individuals that are the ultimate beneficial owners of Open Pass, along with Fortenova Group's management and their accomplices." Joint App'x at 371.

## II. Procedural History

On March 26, 2024, SBK filed a petition in the Southern District of New York pursuant to 28 U.S.C. §1782 seeking leave from the District Court to issue

10

document and deposition subpoenas to Akin for use in the EU Action, the Malta Action, and the Anticipated Litigation. SBK asserted that the discovery sought would allow it to "discover and expose facts and evidence that demonstrate the existence of an unlawful scheme to cause damages to SBK ART and ultimately deprive it of its ownership rights and benefits in [Fortenova]." Joint App'x at 353. Akin opposed the petition, and the parties appeared for oral argument before the Magistrate Judge to whom the petition had been referred.

On July 30, 2024, the Magistrate Judge issued an R&R recommending that SBK's petition be granted, subject to significant restrictions in three main areas. *See SBK I*, 2024 WL 4264893, at *1, *20. First, the R&R concluded that discovery on just three topics would likely be relevant to either or both the Malta Action and the EU Action:[5] "(1) Mr. Alketbi's acquisition of [SBK]; (2) the Akin Opinion; and (3) the Corporate Changes." *Id.* at *20. Second, "the relevant period for document production should be from February 1, 2022 (shortly before Mr.

---

[5] SBK also sought discovery for use in the Anticipated Litigation, but the Magistrate Judge concluded that it was not clear that the Anticipated Litigation met Section 1782's second statutory element. *See SBK I*, 2024 WL 4264893, at *7. Because SBK "is seeking the same discovery for use in the Anticipated Litigation as it seeks in the Malta Action and the EU Action, and since the pendency of the Malta Action and the EU Action satisfies the requirement of a foreign proceeding," the Magistrate Judge found it unnecessary to "address whether the Anticipated Litigation would also satisfy the requirement." *Id.* (citation modified).

Alketbi's acquisition of [SBK]) to December 31, 2023 (shortly after the sale of MidCo), which seems to be the period during which there are most likely to be responsive documents on those topics." *Id.* Third, "production [is] limited to non-privileged materials that are uniquely possessed by Akin or that have been shared with third parties other than Fortenova." *Id.*

On May 30, 2025, the District Judge adopted the R&R in full and rejected, among others, Akin's objection that the Magistrate Judge had misapplied this Court's decision in *Kiobel*. *See SBK II*, 2025 WL 1537474, at *1, *9-11. The District Judge accordingly granted SBK's petition subject to the parameters in the R&R.

Akin timely appealed.

## **DISCUSSION**

We conclude that the District Court did not abuse its discretion by granting the Section 1782 petition for discovery from Akin – a U.S. law firm – without first making a finding as to whether those documents were discoverable abroad from Akin's client.

"We review de novo a district court's ruling that a petition satisfies §1782's jurisdictional [i.e. statutory] requirements, and review for abuse of discretion a district court's application of the discretionary [] factors" set forth in *Intel Corp. v.*

*Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 98 (2d Cir. 2020) (first alteration in original) (citation modified). "Where a district court exercises its discretion premised on the misapplication of a legal principle, the court by definition abuses its discretion and makes an error of law." *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 168 (2d Cir. 2003).

## I.    Law Applicable to Section 1782 Petitions

Section 1782(a) of Title 28 "affords access to discovery of evidence in the United States for use in foreign proceedings." *In re Edelman*, 295 F.3d 171, 175 (2d Cir. 2002). The statute, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. §1782(a). The statute also sets forth the practices and procedures applicable to that discovery:

> The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the

international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

*Id.* Finally, the statute maintains protections for privileges: "A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." *Id.*

## A. History and Purposes of Section 1782

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. "Federal law has provided for some form of judicial assistance to foreign courts since 1855," *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993), when Congress enacted a statute empowering courts to compel witness testimony in response to letters rogatory from any court of a foreign country, *see* Act of March 2, 1855, ch. 140, §2, 10 Stat. 630 (providing that "a United States commissioner designated by [a] circuit court . . . shall be empowered to compel the witnesses to appear and depose in the same manner as to appear and testify in court").[6] Since then, Congress has substantially

---

[6] "A *letter rogatory* is the request by a domestic court to a foreign court to take evidence from a certain witness." *Intel*, 542 U.S. at 247 n.1 (citation modified).

14

broadened the scope of the discovery assistance that federal courts may provide for foreign proceedings. *See Intel*, 542 U.S. at 247-49; *see also Gianoli Aldunate*, 3 F.3d at 57 ("The evolutionary process from the 1855 act to the current statute . . . has generally been one of increasingly broad applicability.").

The current version of the statute reflects this history. It vests a district court with the power to compel a person who resides in or is found in that district to give "testimony or [a] statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. §1782(a). In other words, both written and testimonial discovery is available. *Cf.* Act of June 25, 1948, ch. 646, §1782, 62 Stat. 949 ("The deposition of any witness residing within the United States to be used in any civil action pending in any court in a foreign country . . . may be taken before a person authorized . . . by the district court of any district where the witness resides or may be found.").

The statute allows a request to be made by "a foreign or international tribunal *or upon the application of any interested person*." 28 U.S.C. §1782(a) (emphasis added); *see Gianoli Aldunate*, 3 F.3d at 57 (discussing 1964 amendments which "allowed not only foreign tribunals and officials to initiate the process, but also private litigants ('any interested person')" (quoting Pub. L. No. 88-619, 78

15

Stat. 995, 997 (1964)).  Finally, the statute empowers a court to "prescribe the practice and procedure" of the discovery; otherwise, the Federal Rules of Civil Procedure govern.  28 U.S.C. §1782(a).  This language, which Congress added in 1964, "gives the court *complete discretion* in prescribing the procedure to be followed.  It permits, but does not command, following the foreign or international practice."  S. Rep. No. 88-1580, at 8-9 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 3782, 3789 (emphasis added).  And "irrespective of whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, or other nature," the Federal Rules of *Civil* Procedure apply to the discovery.  *Id.* at 9.

B.     **Section 1782's Two-Step Inquiry**

"A district court analyzes a §1782 petition in two steps."  *Banoka S.à.r.l. v. Elliot Mgmt. Corp.*, 148 F.4th 54, 64 (2d Cir. 2025).  First, a court must satisfy itself that the statutory, or jurisdictional, requirements are met:

> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022)

16

(citation modified).

Second, "[o]nce those statutory requirements are met, a district court may grant discovery under §1782 in its discretion." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015). "This discretion, however, is not boundless, but must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 297-98 (citation modified); *see also In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997). "To evaluate whether granting an application would further those aims, courts are to consider four factors that the Supreme Court laid out in *Intel*." *Fed. Republic of Nigeria*, 27 F.4th at 148. Those factors are:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for §1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."

*Kiobel*, 895 F.3d at 244 (quoting *Intel*, 542 U.S. at 264-65).

17

The *Intel* factors are not exclusive, and they "are not to be applied mechanically. A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Id.* at 244-45. But "while a district court may freely consider and weigh factors that it finds relevant – even those which do not fall neatly within one of the four *Intel* factors – it abuses its discretion when it imposes strict requirements related to those factors that go beyond the limitations found directly within the statute." *Banoka*, 148 F.4th at 65.

We have long "read [S]ection 1782's investment of broad discretion in the district courts as an invitation for district judges to fashion creative means of implementing the statute's double goal." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). For example, "the district court can utilize its powers under the Federal Rules of Civil Procedure to lessen significantly the burden of handling [the] discovery." *In re Malev Hungarian Airlines*, 964 F.2d 97, 102 (2d Cir. 1992). "[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa*, 51 F.3d at 1101; *see also Malev*, 964 F.2d at 100 (District courts "may impose conditions to minimize the compliance burdens, so

long as those conditions do not impose extra-statutory barriers to obtaining discovery.").

## C. Discovery under Section 1782

The broad availability of discovery under Section 1782 means "the role of the district courts as gatekeepers is paramount." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134 (2d Cir. 2017). If the district court concludes that the statutory requirements are met and its exercise of discretion is appropriate, the Section 1782 inquiry is complete. The ordinary rules of discovery then apply:

> The section 1782 screen — the judicial inquiry that the statute requires — is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court. Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including Rule 26, come into play; and with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out.

*Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (Posner, *J.*).

In other words, once a district court has opened the statutory gate to discovery, any disputes around its proper scope are governed by the ordinary rules of discovery, including the Federal Rules of Civil Procedure. *See id.*; *accord Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012) ("[Section 1782] provides for a threshold determination of whether to allow foreign litigants to enjoy discovery in U.S. courts in accordance with federal rules. The manner in

19

which discovery proceeds will be determined by normal discovery rules."

(citation modified)); *Banco Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469,

474-75 (5th Cir. 2022) (explaining that the Section 1782 inquiry "drops out" after

the initial inquiry, meaning that "the next stage of proceedings, after full

resolution of the statutory basis for discovery, occurs under the Federal Rules for

discovery's scope").

Indeed, Section 1782 expressly provides that the Federal Rules govern the

procedures for discovery. *See* 28 U.S.C. §1782(a) ("To the extent that the order

does not prescribe otherwise, the testimony or statement shall be taken, and the

document or other thing produced, in accordance with the Federal Rules of Civil

Procedure."). And a district court may issue a discovery order under Section

1782, even if the court ultimately determines that the *specific* discovery requests

issued pursuant to the order are barred under those rules. *See Edelman*, 295 F.3d

at 180-81.

In *Edelman*, we addressed "whether an individual, who lives and works

abroad, may be subject to being subpoenaed for deposition pursuant to §1782(a)

while traveling in the United States." *Id.* at 173. We concluded that "[a]s a matter

of law, a person who lives and works in a foreign country is not necessarily

20

beyond the reach of §1782(a) simply because the district judge signed the discovery order at a time when that prospective deponent was not physically present in the district." *Id.* at 180. But we acknowledged that the Section 1782 inquiry was not the end of the analysis. The deposition subpoena could still be quashed pursuant to Rule 45 if it "requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person." *Id.* at 181 (quoting Fed. R. Civ. P. 45(c)(3)(A)(ii) (amended 2013)).[7] We also observed that Rule 26's protections are available after the issuance of a Section 1782 order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* at 178 (quoting Fed. R. Civ. P. 26(c)). Rules 45 and 26 thus impose important limitations on the scope of discovery available to the petitioner, but those limitations come into play only after – and separately from – the determination of whether discovery is authorized under Section 1782.

With this understanding of a district court's authority and discretion under Section 1782, we turn to the question presented.

---

[7] The current version of this provision is found in Rule 45(c)(1)(A) and (d)(3)(A)(ii).

**II.   The District Court did not abuse its discretion when it granted SBK's petition.**

Akin does not dispute that the District Court had jurisdiction under Section 1782 to grant the petition.  The question before this Court is narrow: did the District Court abuse its discretion in granting a Section 1782 petition for discovery from a client's law firm when the materials sought were undiscoverable from the client abroad?[8]  Akin contends that this Court's decision in *Kiobel* requires us to conclude that the District Court abused its discretion.

As we explain below, the District Court did not commit legal error in interpreting and applying *Kiobel*.  *Kiobel* did not change the well-settled rule that Section 1782 does not impose a "foreign-discoverability requirement."  *Intel*, 542 U.S. at 253.  And "we have not authorized denial of discovery pursuant to §1782 *solely* because such discovery is unavailable in the foreign court."  *Banoka*, 148 F.4th at 65 (citation modified).  We also reject Akin's alternative argument that this case should be remanded for the District Court to consider certain exterritoriality factors.

---

[8] We assume for purposes of this decision that the materials that SBK sought were in fact undiscoverable from the client.

**A.     The District Court did not abuse its discretion under *Kiobel*.**

The District Court properly rejected Akin's arguments that *Kiobel* requires denial of the petition. *See SBK II*, 2025 WL 1537474, at *9-12. In *Kiobel*, we addressed a petition seeking documents from the law firm Cravath, Swaine & Moore LLP ("Cravath") for use in a lawsuit against its client, Royal Dutch Shell ("Shell"), in the Netherlands. *See* 895 F.3d at 240. The petitioner, Esther Kiobel, sought a subpoena for all deposition transcripts, documents, and communications that Shell had produced to her in prior litigation. *See id.* at 241. That discovery, however, was subject to a stipulated confidentiality order. *See id.* "Kiobel did not subpoena Shell, only Cravath," *id.* at 242, which was "holding the documents because it represented Shell in prior litigation," *id.* at 240. We held that the district court abused its discretion in granting the petition, "in light of the *Intel* factors, the respect owed to confidentiality orders, and the concerns for lawyer-client relations." *Id.* at 248.

Focusing on our third rationale – policy concerns regarding lawyer-client relations – Akin insists that "[t]his case is controlled by *Kiobel*'s observation that 'a district court *should not* exercise its discretion to grant a Section 1782 petition for documents held by a U.S. law firm in its role as counsel for a foreign client if

23

the documents are undiscoverable from the client abroad, because this would disturb attorney-client communications and relations.'" Appellant's Br. at 26-27 (quoting *Kiobel*, 895 F.3d at 246). We disagree.

First, neither *Kiobel* nor the cases it relied on establish a categorical limitation under Section 1782 barring discovery of documents held by a law firm if those documents are undiscoverable from the client abroad. Second, our ruling in *Kiobel* rested on our weighing of the *Intel* factors, which is not challenged here, and the existence of the confidentiality order, a factor also not present here. Third, the rule Akin seeks to impose would create a foreign-discoverability requirement contrary to longstanding precedent. And fourth, the District Court correctly determined that Akin's concerns regarding privilege and burden can be addressed under the ordinary rules of discovery.

### 1. Our previously expressed policy concerns do not support a categorical limitation on Section 1782 discovery.

*Kiobel* relied on two prior cases in articulating the policy concerns around attorney-client relations: *In re Sarrio, S.A.*, 119 F.3d 143 (2d Cir. 1997), and *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165 (2d Cir. 2003).

In *Sarrio*, this Court considered "whether the attorney-client privilege shields documents undiscoverable abroad but transferred to an attorney in the

United States for advice on their amenability to §1782 subpoena." *Sarrio*, 119 F.3d at 147. The district court had held that Chase Manhattan Bank ("Chase") "was not obligated to produce documents that were held abroad by Chase but delivered to New York to be reviewed by counsel." *Id.* at 145. Addressing the question of whether Chase's documents were protected by attorney-client privilege, we explained that "the policy of promoting open communications between lawyers and their clients . . . would be jeopardized if documents unreachable in a foreign country became discoverable because the person holding the documents sent them to a lawyer in the United States." *Id.* at 146. We declined, however, to reach the issue because Chase no longer asserted its privilege on appeal, rendering the issue moot. *See id.* at 147. *Sarrio* thus provides no holding on the issue before us now.

*Ratliff* considered this dicta from *Sarrio*. The *Ratliff* plaintiffs sought documents from the law firm Davis Polk & Wardwell ("Davis Polk"); those documents belonged to Davis Polk's client but came under the firm's control during its representation of the client. *See Ratliff*, 354 F.3d at 167. "Davis Polk . . . argued that under *Sarrio* documentary evidence is not available from a lawyer custodian, even absent attorney-client privilege, if the court does not have

jurisdiction over the client/document owner." *Id.* The district court agreed and denied the plaintiffs' motion to compel. *See id.* at 168. We reversed because the client had voluntarily authorized Davis Polk to send the documents to the Securities and Exchange Commission ("SEC"):

> [E]ven if Davis Polk . . . is claiming the protection discussed in *Sarrio,* that protection, even if it had been the holding of *Sarrio,* would not avail Davis Polk in this case. Even if we assume that, when the documents were sent by [the client] to Davis Polk to secure the firm's legal advice, they were entitled to protection, such protection was lost when [the client] voluntarily authorized Davis Polk to send the documents to the SEC. . . . [A]ny such protection does not continue when the client voluntarily discloses the documents to a third party, here a government agency.

*Id.* at 170. We assumed, but did not decide, that the documents would have been entitled to some protection because they were held by a law firm.

*Kiobel* discussed *Sarrio* and *Ratliff.* Akin quotes from that discussion in a manner that suggests *Kiobel* altered the longstanding principles governing Section 1782 petitions, at least when those petitions seek discovery from a law firm. *See* Appellant's Br. at 26-27. But an examination of the fuller discussion in *Kiobel* reveals that it did no such thing:

> Therefore, although our Court in *Ratliff* held that Davis Polk was subject to [the plaintiff's] subpoena, *Ratliff* did not disturb *Sarrio*'s suggestion that a district court should not exercise its discretion to grant a Section 1782 petition for documents held by a U.S. law firm in

26

its role as counsel for a foreign client if the documents are undiscoverable from the client abroad, because this would disturb attorney-client communications and relations. *Sarrio*, 119 F.3d at 146; *Ratliff*, 354 F.3d at 170.

*Kiobel*, 895 F.3d at 246. Rather, in *Kiobel*, we simply offered a commentary on the interplay of *Sarrio* and *Ratliff*. Those cases, and the policy concerns they raised, were relevant to our discussion, but not the sole basis for our decision.

### 2. The *Intel* factors and the confidentiality order were essential to the *Kiobel* decision.

We also found pertinent two other grounds – the *Intel* factors and the confidentiality order – which Akin downplays. *Kiobel* itself emphasized the fact-intensive nature of the Section 1782 analysis. *See id.* at 245 ("A district court should also take into account any other pertinent issues *arising from the facts of the particular dispute*." (emphasis added)). And in fact, the *Kiobel* Court observed that the confidentiality order in place made the case "extraordinary, and possibly unique." *Id.* at 246-47. As the District Court correctly stated, *Kiobel* "did not paint with the broad brush that Akin imagines" but "instead followed from the circumstances of that case." *SBK II*, 2025 WL 1537474, at *10. The District Court did not err in concluding that *Kiobel* is distinguishable and does not control this case.

Two of the *Intel* factors weighed against the *Kiobel* petition, distinguishing

27

it from the petition here. The first factor, whether "the person from whom discovery is sought is a participant in the foreign proceeding," *Intel*, 542 U.S. at 264, counseled against granting the petition because the real party from whom the documents were sought was not Cravath, but Shell. *See Kiobel*, 895 F.3d at 245. The third factor, "whether the §1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," *Intel*, 542 U.S. at 265, also weighed against granting the petition because "statements made by Kiobel's counsel demonstrate[d] that Kiobel [was] trying to circumvent the Netherlands' more restrictive discovery practices, which [was] why they [were] seeking to gather discovery from Cravath in the U.S." *Kiobel*, 895 F.3d at 245.

Here, as found by the Magistrate Judge and adopted by the District Judge, only *one* of the *Intel* factors weighs against granting SBK's petition. *See SBK I*, 2024 WL 4264893, at *14. Further, Akin does not challenge the District Court's balancing of the *Intel* factors. *See* Reply at 4 (asserting that the "pertinent issue is *not how the district court balanced the four specified* Intel *factors*" (emphasis added)

(citation modified)).[9]

Even more significantly, we found the confidentiality order in *Kiobel* dispositive. *See Kiobel*, 895 F.3d at 246-47. Specifically, even though a stipulated confidentiality order restricted Kiobel from using Shell's confidential documents without Shell's agreement or a court order, the district court in *Kiobel* "required [Kiobel and Cravath] to sign a new stipulation" with fewer protections. *Id.* at 241-42. "Under the new stipulation, Shell ha[d] no right to enforce a breach of confidentiality." *Id.* at 242. On appeal, we concluded that "[t]he decision to alter the confidentiality order without Shell's participation, and without considering the costs of disclosure to Shell, makes this case exceptional, and *mandates reversal*." *Id.* at 247 (emphasis added). We emphasized that "[p]rotective orders serve the vital function of securing the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice." *Id.* (citation modified).

The district court's discovery order in *Kiobel* effectively allowed Section

---

[9] Although Akin also argued before the District Court that "the Petition attempts an end run around applicable sanctions law in the United Kingdom and the EU," Akin has abandoned that argument on appeal. *SBK II*, 2025 WL 1537474, at *8.

1782 to "become a workaround to gain discovery" while evading the confidentiality agreement. *Id.* That is the kind of abuse of process that we have directed district courts to prevent when evaluating Section 1782 petitions. *See Euromepa*, 51 F.3d at 1101 n.6 ("[I]f the district court determines that a party's discovery application under [S]ection 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation."); *accord Heraeus Kulzer*, 633 F.3d at 594 ("[D]istrict courts must be alert for potential abuses that would warrant a denial of an application to be allowed to take such discovery.").

Granting SBK's petition did not require modifying any existing confidentiality order, and Akin here does not argue (nor did the District Court find) that SBK's petition was "made in bad faith, for the purpose of harassment, or unreasonably [sought] cumulative or irrelevant materials." *Euromepa*, 51 F.3d at 1101 n.6. Thus, *Kiobel* is distinguishable and does not control.

### 3. Section 1782 does not impose a foreign-discoverability requirement.

Akin contends that "the critical question here is whether the relevant documents are obtainable from Fortenova through foreign discovery

30

procedures." Reply at 10. In so doing, Akin asks us to adopt a "foreign-discoverability" requirement under Section 1782 just for discovery sought from law firms. But no such requirement exists, and imposing one would contradict both Supreme Court and Second Circuit precedent.

The Supreme Court expressly held in *Intel* that Section 1782 does *not* include a foreign-discoverability rule – that is, the statute does not require a "threshold showing by the party seeking discovery that what is sought be discoverable in the foreign proceeding." *Intel*, 542 U.S. at 252-53 (citation modified). *Intel* approved this Court's decision in *Gianoli Aldunate*, *see id.* at 260, in which we likewise held that that no such requirement exists in the statute, explaining:

> Given that the statutory language is silent and the legislative history indicates that in exercising its discretionary power, the court *may* take into account the nature and attitudes of the government of the country from which the request emanates and the character of the proceedings in that country, we find it difficult to believe that Congress actually intended section 1782 to have an implicit requirement that any evidence sought in the United States be discoverable under the laws of the foreign country.

*Gianoli Aldunate*, 3 F.3d at 59 (citation modified). Although "district judges may well find that in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in their exercise of discretion," *id.*

at 60, "foreign discoverability cannot be used . . . as [] a blunt instrument," *Metallgesellschaft*, 121 F.3d at 80; *see also Mees*, 793 F.3d at 303 (emphasizing that "the availability of the discovery in the foreign proceeding should not be afforded undue weight").

Thus, we cannot impose categorical limitations on Section 1782's reach, even in the face of strong policy concerns surrounding protection of attorney-client relations. *Cf. Intel*, 542 U.S. at 261 ("While comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable foreign-discoverability rule into the text of §1782(a).").

### 4. Akin's concerns are properly addressed under ordinary discovery rules.

Akin's argument ultimately is not about the risk of disclosing privileged materials; indeed, neither SBK's proposed subpoena nor the District Court's order requires disclosure of such documents. *See SBK I*, 2024 WL 4264893, at \*20 (narrowing subpoena to "non-privileged materials that are uniquely possessed by Akin or that have been shared with third parties other than Fortenova"); *accord* 28 U.S.C. §1782(a) ("A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally

32

applicable privilege."). Rather, Akin argues that "[n]umerous documents created by Akin in its role as a legal advisor, negotiator, or evaluator for Fortenova . . . risk disclosure if they are deemed to be neither attorney-client privileged nor attorney work product." Appellant's Br. at 42. Conducting a "document-by-document review to determine whether a document is better categorized as lawyering or lobbying [will force] clients (and their law firms) . . . to undergo a tedious and expensive exercise." Appellant's Br. at 47. According to Akin, because this *risk* of disclosure implicates *Kiobel*'s policy concerns, the District Court should have denied SBK's petition outright. We disagree. As explained, *Kiobel*'s policy concerns alone do not require denial, and the District Court did not abuse its discretion in granting the petition, in spite of the potential burdens that may be imposed on Akin in responding.

The District Court properly fashioned its order to meet the twin aims of Section 1782. *See Mees*, 793 F.3d at 297-98. Specifically, the District Court limited the scope of the subpoenas to topics that it found relevant to either or both the Malta Action and the EU Action; it tailored the time period for document production to February 1, 2022, through December 31, 2023; and it limited production to only non-privileged materials uniquely possessed by Akin or

33

shared with third parties other than Fortenova. *See SBK II*, 2025 WL 1537474, at

*12-13. Through these limitations, the District Court properly balanced SBK's

need for discovery to assist it in foreign litigation with Akin's concerns regarding

attorney-client relations and undue burden. The District Court recognized that

Akin's concerns about these issues could and should be addressed through

normal discovery procedures. *See id.* at *12 ("Akin remains at liberty to file non-

frivolous overbreadth objections to particular subpoena calls.").

As noted, Section 1782 merely acts as a gate designed to prevent abuses.

*See Accent Delight*, 869 F.3d at 134; *Heraeus Kulzer*, 633 F.3d at 597. The District

Court, in granting SBK's petition, opened the gate to permit SBK to seek

discovery from Akin; once the discovery requests are formally issued, the

ordinary rules of discovery will govern any disputes regarding specific materials.

Those rules will adequately protect Akin. *See, e.g.*, *Edelman*, 295 F.3d at 181 ("Yet

Rule 45 may bar the deposition notwithstanding our holding that [the

prospective deponent] is not beyond the scope of §1782(a).").

Akin may move to quash any requests issued or may seek a protective

order if necessary to protect it or any person "from annoyance, embarrassment,

oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). And of

course, under Rule 26(c), the District Court has broad discretion to fashion a protective order as appropriate, including to "forbid[] the disclosure or discovery"; "prescrib[e] a discovery method other than the one selected by the party seeking discovery;" or "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." *Id.*

We leave it to the District Court to resolve any future disputes over specific discovery requests. We conclude today that the District Court did not abuse its discretion in opening the gate to discovery under Section 1782.

\* \* \*

In sum, a district court is not precluded from issuing an order under Section 1782 for discovery from a law firm seeking materials connected with its representation of a foreign client *solely* because the materials sought are undiscoverable from the client abroad. *Kiobel* merely applied the well-settled principles governing Section 1782 petitions to the facts of that case, and because *Kiobel* is distinguishable, the District Court did not abuse its discretion in granting the application for discovery from Akin. Any remaining objections concerning privilege or burden may be resolved by the District Court applying

35

the ordinary rules of discovery.[10]

### B.    The District Court did not abuse its discretion under *Banoka*.

Akin argues in the alternative that, even if we do not agree that *Kiobel*

requires reversal, we should vacate and remand with instructions to consider

certain extraterritoriality factors, including "the foreign location of the

documents and their primary custodians."  Appellant's Br. at 51.  Akin relies on a

recent decision in which we affirmed the denial of a Section 1782 petition based,

in part, on the district court's concerns about extraterritorial discovery.  *See*

*Banoka*, 148 F.4th at 68-70.  But nothing in *Banoka* requires a district court to

consider these extraterritoriality factors.  And in any event, the District Court

here actually considered those factors.

In *Banoka*, we reviewed a district court's finding that the petitioner's

---

[10] To the extent the District Court rested its decision on a separate "lobbying" exception, we do not rely on any such distinction.  Moreover, we express no view as to whether Akin engaged in lobbying when it prepared the Akin Opinion or in connection with other actions, or as to whether documents prepared or acquired by Akin in the context of those efforts are non-privileged.  To the extent the question of whether and when Akin engaged in lobbying is relevant to the privileged status of any records in Akin's possession, disputes about this question are among those to be resolved in the course of discovery rather than as an element of the Section 1782 analysis.  *See First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 61 (S.D.N.Y. 2017) (discussing the differences between legal work and lobbying work); *In re Grand Jury Subpoenas dated Mar. 9, 2001*, 179 F. Supp. 2d 270, 285 (S.D.N.Y. 2001) (explaining privilege differences between legal and lobbying work).

discovery requests were unduly burdensome under the fourth *Intel* factor. *See id.*

at 68; *see Intel*, 542 U.S. at 265 ("Also, unduly intrusive or burdensome requests

may be rejected or trimmed."). When analyzing this factor, a court "should

assess whether the discovery sought is overbroad or unduly burdensome by

applying the familiar standards of Rule 26." *Mees*, 793 F.3d at 302. Rule 26

allows parties to obtain discovery of material that is "relevant to any party's

claim or defense and proportional to the needs of the case," while considering,

among other things, "whether the burden or expense of the proposed discovery

outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Thus, a "court *must* limit

the frequency or extent of discovery otherwise allowed if it determines that the

discovery sought is unreasonably cumulative or duplicative, or can be obtained

from some other source that is more convenient, less burdensome, or less

expensive." *Banoka*, 148 F.4th at 68-69 (citation modified). "[T]he ultimate

question of burdensomeness is within the district court's discretion to decide,

and not ours." *Fed. Republic of Nigeria*, 27 F.4th at 159.

Applying these principles, we found no abuse of discretion in the district

court's consideration of "the foreign location of the documents and the foreign

status of their primary custodian under the fourth *Intel* factor." *Banoka*, 148 F.4th

at 70 (citation modified). Those facts – coupled with the overbreadth of the request and the fact that the respondent U.S. company was "operationally distinct" from the foreign entities that held the documents – led the district court to weigh the fourth *Intel* factor against the petitioner. *Id.* at 69-70. We affirmed. But while *Banoka* found it was not an abuse of discretion to consider the foreign location of documents, it did not impose a rule *requiring* consideration of that factor. That the *Banoka* district court did not abuse its discretion in *denying* that petition does not mean the District Court here abused its discretion in *granting* this petition. *Banoka* merely underscores the well-settled principle that a district court has broad discretion under Section 1782. *See id.* at 65.

As the District Court stated: "[The R&R] significantly limited the requested discovery, and found that the burden presented [by] the approved discovery justified by the needs of SBK's foreign litigation, which, aims to recoup approximately 500 million euros in losses alleged suffered by SBK as a result of the Corporate Changes." *SBK II*, 2025 WL 1537474, at *12 n.8. Further, the District Court was fully aware of the extraterritorial nature of the discovery. *See, e.g., SBK I*, 2024 WL 4264893, at *19-20 (addressing Akin's burden argument that proposed subpoenas would "discourage clients from hiring the foreign office of

38

American law firms"). In assessing the proportionality and burden issues, the

District Court acted well within its discretion.

Because the District Court here weighed all relevant considerations,

vacatur and remand on this alternative basis is not warranted.

## **CONCLUSION**

For the foregoing reasons, the District Court's order is AFFIRMED.